United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTHA DAVIS, *et al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>EMI GROUP LIMITED, *ET AL.*<br><br>    Defendants. | Case No.: 12-cv-1602 YGR<br><br>**ORDER GRANTING MOTION OF PLAINTIFF MARTHA DAVIS TO DISQUALIFY COUNSEL** |

Plaintiff Martha Davis ("Davis") moves this Court to disqualify Mitchell, Silberberg & Knupp, LLP ("MSK"), counsel of record for Defendants EMI Group Limited, EMI Group, Inc., and Capitol Records, LLC ("Defendants") on the grounds that MSK formerly represented her and her band, The Motels, and such representation included negotiation of the contracts at the center of her claims against Defendants.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion to Disqualify MSK as counsel for Defendants EMI Group Limited, *et al*.

## SUMMARY OF FACTS

Plaintiff Martha Davis filed her Second Amended Complaint on August 1, 2012 against Defendant record labels EMI and related entities (collectively, "Defendants") seeking relief for Defendants' breach of the royalty provisions of her contracts with Defendants.

The evidence in the record indicates as follows:

Davis first retained MSK on or about 1979. (*See* Declaration of Martha Davis [Dkt No. 29-1, hereinafter "Davis Dec."] ¶ 4.) MSK represented Davis and The Motels for more than 10 years. During that time, MSK negotiated two recording contracts on Davis's behalf: the May 12, 1979 Contract ("1979 Contract") and the April 1, 1985 Contract ("1985 Contract") with Capitol Records, Inc., an entity related to Defendants herein. (Davis Dec. ¶ 5.) The 1979 Contract and 1985 Contract are the agreements from which the allegations in this case arise. (*See* Second Amended Complaint [Dkt. No. 20, hereinafter "SAC"] ¶¶ 26, 29, 32, and 33; *see also* Davis Dec. ¶ 5.)

In addition to negotiating the contracts which are at the heart of this litigation, MSK's representation of Davis included:

- drafting and sending demand letters to Defendants on Davis's behalf;
- negotiating advances from Defendants against royalties to be paid Davis;
- negotiating amendments to the 1979 and 1985 Contracts;
- drafting and holding a Power of Attorney (specifically, Milt Olin, a partner with MSK) for Davis in her capacity as a partner in The Motels Partnership;
- working with The Motels' business manager regarding The Motels' financial condition and the revenue it expected to receive from Defendants

(Declaration of Neville Johnson [Dkt. No. 29-2, hereinafter "Johnson Dec."] ¶ 7, Davis Dec. ¶ 6.). Numerous pieces of correspondence drafted by MSK attorneys listed Russell J. Frackman, Defendants' senior counsel in this litigation, on the firm's letterhead as being senior to the author of such correspondence. (Johnson Dec. ¶ 7, Exh 21.) Through at least September 2000, MSK directly

received The Motels' royalty statements from Defendants at its current office address. (Johnson Dec. Exh. 23.) In addition MSK had an ownership interest in Martha Davis Productions through MSK partner, Milt Olin. (Johnson Dec. Exh. 20.)

After bringing this case, MSK partner Russell Frackman contacted Davis's counsel and requested a conflict of interest waiver with respect to MSK's representation of Defendants. (Johnson Dec. ¶ 3.) Davis declined to waive the conflict. (Johnson Dec. ¶ 4, Davis Dec. ¶¶ 10-11.) MSK nonetheless appeared on behalf of Defendants.

## LEGAL STANDARDS APPLICABLE TO THIS MOTION

The decision to disqualify counsel is committed to the sound discretion of the district court. *See Gas-A-Tron of Ariz. v. Union Oil Co. of Calif.,* 534 F.2d 1322, 1325 (9th Cir.1976), cert. denied 429 U.S. 861 (1976); *accord Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, C08-04909 SI, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010). The Civil Local Rules for the Northern District of California provide that every attorney practicing in this District must "comply with the standards of professional conduct required of the members of the State Bar of California." N.D. Cal. Civ. Local Rule 11-4(a)(1). As a result, when ruling on a motion to disqualify, "the Court applies California law …." *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, C08-04909 SI, 2010 WL 1136478 *4 (N.D. Cal. Mar. 20, 2010) (citing *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914 (N.D. Cal. 2003)); *see also Asyst Technologies v. Empak, Inc.*, 962 F. Supp. 1241, 1242 (N.D Cal. 1997); *Elan Transdermal Ltd. v. Cygnus Therapeutic Systems*, 809 F. Supp. 1383, 1387 (N.D. Cal. 1992). The Court therefore looks to the California Rules of Professional Conduct, and cases interpreting those rules, in reaching its decision on this motion.

## DISCUSSION

### A. Imputed Conflict of Interest Requiring Consent

The California Rules of Professional Conduct preclude an attorney from representing a party adverse to a former client when the former representation was one where the attorney would have obtained confidential information material to the current representation. Rule 3-310(E) of the California Rules of Professional Conduct states:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

A former client seeking disqualification need not prove the former attorney actually possess confidential information, but need only show that there is a "substantial relationship" between the former and current representation. *HF Ahmanson & Co. v. Salomon Bros., Inc.,* 229 Cal.App.3d 1445, 1452 (1991). The "substantial relationship" test, as set forth in *Global Van Lines, Inc. v. Superior Court*, 144 Cal. App. 3d 483 (1983), states that:

> When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed.

*Id.* at 489.

The California Supreme Court has long interpreted the substantial relationship test to mean that the presumed access to confidential information means that "disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification *extends vicariously to the entire firm.*" *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994) (emphasis added); *see also Adams v. Aerojet-Gen. Corp.*, 86 Cal. App. 4th 1324, 1333 (2001) ("[i]t is now firmly established that where the attorney is disqualified from representation due to an ethical conflict, the disqualification extends to the entire firm"). The court in *City National Bank v. Adams*, 96 Cal. App. 4th 315 (2002) summarized the disqualification rule in cases of successive representation:

> Our analysis of the case law involving successive representation of clients leads us to three conclusions that guide resolution of this case. First, if the nature of the representation is such that confidences could have been exchanged between the lawyer and the client, courts will conclusively presume they were exchanged, and disqualification will be required. [Citations.] [¶] Second, there is a limited exception to this conclusive presumption in the rare instance where the lawyer can show that there was no opportunity for confidential information to be divulged. [Citations.] [¶]

> *Third, the limited exception is not available when the lawyer's former and current employment are on opposite sides of the very same matter or the current matter involves the work the lawyer performed for the former client.*

*Id.* at 327–28 (emphasis supplied).  Where the current matter involves work performed for a former client, the current representation "implicate[s] the lawyer's duty of loyalty as well as confidentiality." *Id.* at 329.

Here, MSK seeks to represent Defendants in a case arising out of contracts it negotiated on behalf of Davis *with Defendants*.  The Court finds that there is a clear and substantial relationship between the royalty agreements at issue in this case and MSK's prior representation of Davis in negotiating those same agreements.  That relationship is sufficient to create the presumption that MSK has confidential information material to the current matter and that this information is shared by all attorneys in the firm.  That presumption requires the disqualification of MSK and all of its attorneys.  *See City National Bank*, 96 Cal. App. 4th at 327-28; *see also*, *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1153-54 (1999) (observing "[t]he vicarious disqualification rule recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information.").

MSK concedes that the matters here are substantially related to its former representation of Davis, but argues that there are exceptions to the vicarious disqualification rule that should apply here, citing *Goldberg v. Warner Chappell Music, Inc.*, 125 Cal. App. 4th 752 (2005).  The California Court of Appeal in *Goldberg* held that "[a]n attorney's presumed possession of confidential information concerning a former client should not automatically cause the attorney's former firm to be vicariously disqualified where the evidence establishes that no one other than the departed attorney had any dealings with the client or obtained confidential information." *Id.* at 755. Factually, *Goldberg* bears little resemblance to this case.  There, the extent of the former

5

"representation" by the firm (coincidentally, also MSK) consisted of no more than a few conversations with one former partner about a proposed employment agreement, which never resulted in a formal representation relationship or the opening of a client file.  The partner had been gone from the firm for three years prior to the litigation, and no one else at the firm was aware of the *de facto* representation.  The court found, under those circumstances, no reason to believe that confidential information might have been shared with anyone who was still at the firm.  *Goldberg*, 125 Cal. App. 4th at 758, 762.

Here, MSK argues that its relationship with Davis ended no later than April 2001, and that all the former MSK attorneys who represented Davis on the substantially related matters left the firm by that time. (Declaration of Russell Frackman [Dkt. No. 34-1, hereinafter "Frackman Dec."] ¶ 6.) However, and in contrast to *Goldberg*, at least nine MSK attorneys worked on matters for Davis and The Motels directly related to the matters at issue in this litigation. (Declaration of David A. Steinberg [Dkt No. 34-1, hereinafter "Steinberg Dec."] ¶ 5.)  MSK acknowledges that there are two attorneys and one paralegal still working for MSK who performed work in connection with MSK's representation of Davis.  According to MSK, the attorneys worked on unrelated matters and the paralegal performed "corporate tasks" for the band. (Steinberg Dec. ¶ 4.)  MSK still retains several boxes worth of Davis's files in storage per their own document custodian, including tax returns and audits, royalty statements, contract amendments. (Declaration of Joe Howard, Dkt. 34-1, Exh. 1; Steinberg Dec. ¶ 2.)  Moreover, Russell Frackman, now lead counsel for Defendants, was a senior MSK partner at the time of its extensive representation of Davis and the band.  Frackman, along with 58 other current MSK attorneys and paralegals, worked at MSK during the time that Davis and The Motels were represented by MSK. (Frackman Dec. ¶ 11.)   Frackman's assurances that he and the 58 other MSK employees with whom he conferred "never received any confidential information" about Davis (Frackman Dec. ¶¶ 10, 11) are not sufficient to overcome the presumption that attorneys in the

6

same firm share a "close, fluid, and continuing relationship, with its attendant exchanges of information, advice, and opinions" that create ample opportunity for imparting confidential information and impressions from one to another.  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1154 (1999).

Further, Defendants fail to appreciate a "paramount concern" that the Court is charged with preserving "public trust both in the scrupulous administration of judge and in the integrity of the bar." *Genentech, supra,* 2010 WL 1136478 at *4 (citing *State Farm Mut. Auto Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (1999).)  MSK's representation of Davis and The Motels was extensive and the opportunities for sharing confidences and impressions with others in the firm were many.  In addition, this Court has related other similar suits against Defendants where they have chosen different counsel.[1]  The request to maintain the law firm which formerly represented Plaintiff begs the question as to whether Defendants perceive an advantage due to the prior relationship.  Under these circumstances, the concerns about violation of an attorney's duties of confidentiality and loyalty, as addressed in Rule 3-310(E) and the cases interpreting it, preclude MSK's representation of EMI in this action.

## CONCLUSION

For the foregoing reasons, Davis's Motion to Disqualify is **GRANTED**.  Counsel for Defendants, Mitchell, Silberberg & Knupp LLP, are **DISQUALIFIED**.

**IT IS SO ORDERED.**

**Dated: January 4, 2013**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[1] Dale Bozzio v. EMI Group Limited, Capitol Records, LLC, et al, 4:12-cv-2421 YGR and Ralph Tavares, et al v. Capitol Records, LLC, et al, 4:12-cv-3059 YGR.